# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICOH USA, INC. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 19-152 |
| RAYMOND BAILON *et al.* | : | |

## MEMORANDUM

YOUNGE, J.                                                                                                    DECEMBER 6, 2019

## I. INTRODUCTION

In this action, Plaintifff Ricoh USA, Inc. ("Ricoh") asserts claims against a former employee, Defendant Raymond Bailon ("Bailon") and his subsequent employer, Defendant All Copy Products, Inc. ("All Copy"), arising from Bailon's alleged breach of a Confidentiality and Non-Compete Agreement with Ricoh.

Presently before the Court is Bailon's and All Copy's Motion to Dismiss Ricoh's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the following reasons, Bailon's and All Copy's Motion will be granted, and Ricoh's Complaint (ECF No. 1) will be dismissed with leave to amend.

## II. BACKGROUND[1]

Ricoh, formerly known as IKON Office Solutions, Inc. ("IKON"), is engaged in the business of providing various office and workplace management equipment, services, and

---

[1] The factual background is derived from Plaintiff's Complaint and the attached Confidentiality and Non-Compete Agreement (the "Agreement"). (Compl. Ex. A, ECF No. 1-4). *See, e.g.*, *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

supplies.² (Compl ¶ 1.) Bailon began his employment with IKON on January 2, 1995, as an Integrated Account Manager. (*Id.* ¶ 15.) In 2010, Bailon was promoted to Customer Relationship Manager, a sales management position. (*Id.* ¶ 16.) The Complaint does not specify when in 2010 Bailon was promoted. Ricoh alleges that "[w]ith Bailon's promotion to Customer Relationship Manager, he began earning a commission based on sales and an increase in his total wages." (*Id.* ¶ 17.)

On September 7, 2010, Bailon signed the Agreement, with an effective date of October 1, 2010. (*Id.* ¶ 26; *see also* Agmt.) The Agreement provided that Bailon would not use or disclose Ricoh's trade secret or confidential information except as required in the course of his employment with Ricoh. (Agmt. ¶ 7.) The Agreement further provided that for a period of twenty-four months after termination of his employment with Ricoh, Bailon would not: (1) become affiliated with or employed by any competitor of Ricoh, (*id.* ¶ 8); (2) cause a current or prospective Ricoh customer to do business with a competitor or to reduce its business with Ricoh, (*id.*);³ or (3) cause any Ricoh employees to leave the company or hire or cause a third party to hire any Ricoh employees, (*id.* ¶ 10).

Ricoh alleges that Bailon signed the Agreement "in consideration for, among other things, Ricoh's disclosure of trade secrets and confidential information to Bailon, as well as Bailon's promotion to Customer Relationship Manager and a substantial increase in his overall compensation (his compensation increased by approximately 35% during the first 12 months

---

² IKON changed its name to Ricoh in 2012. (Compl. ¶ 15.)

³ The Agreement limited the geographic scope of the competition restrictions in Paragraph 8 to "[a]ny area and/or account assigned to [Bailon] or under [Bailon's] management, control and/or responsibility during the two (2) year period immediately preceding the termination of [Bailon's] employment [with Ricoh]." (Agmt. ¶ 9.)

2

after he accepted the position)." (Compl. ¶ 26.) Ricoh further alleges that it "has provided valuable consideration to Bailon in exchange for [the Agreement], including but not limited to the significant increase in [his] compensation, access to and the benefit from the goodwill Ricoh has developed with customers to which Bailon was assigned, the benefit and use of Ricoh's trade secret and confidential information and valuable specialized training. . . ." (*Id.* ¶ 38.)

However, the Agreement itself recites, in relevant part:

> Employee desires to continue to be employed, by the Company. The Company desires to continue to employ, Employee, provided that as an express condition of such continued employment, Employee enters into this Agreement with the Company.

(Non-Compete Agmt., Background Stmt.) The "Consideration" provision of the Agreement states:

> In consideration of Employee's employment with the Company, the Company's disclosure of trade secrets and confidential information to Employee, and the Company's provision of compensation and benefits to Employee, Employee agrees to be bound by the terms and conditions of this Agreement.

(*Id.* ¶ 3.) The Agreement's confidential information provision recites that "[i]n exchange for the mutual promises and obligations contained in this Agreement, and contemporaneous with its execution, Employer agrees to allow Employee to acquire, be exposed to, and/or have access to material, data, and information of the Company and/or its customers or clients that is confidential, proprietary and/or a trade secret. . . ." (*Id.* ¶ 7.) Finally, the prefatory language of the Agreement's non-competition provision states: "In consideration of the mutual promises contained in this Agreement, the sufficiency of which is acknowledged by the parties, . . ." (*Id.* ¶ 8.)

Bailon's employment with Ricoh terminated on March 31, 2017, and, at that time, his title was Customer Relationship Specialist. (*Id.* ¶¶ 18, 39.) The Complaint includes a series of allegations about the responsibilities Bailon had, and the confidential information and trade

3

secret information he was privy to, as a Customer Relations Specialist, but it does not state when Bailon attained that position or allege any temporal or other connection between his final position and the Non-Compete Agreement. At some point after Bailon's employment with Ricoh ended, he began working for All Copy, a Ricoh competitor. (*Id.* ¶ 40.)

On January 1, 2019, Ricoh filed this lawsuit alleging that Bailon has violated his obligations under the Agreement and that All Copy has interfered with those obligations. Specifically, Ricoh alleges that Bailon directly or indirectly solicited at least three Ricoh customers and caused them to do business with All Copy. (*Id.* ¶¶ 41-44.) Ricoh further alleges that Bailon has solicited or encouraged other employees to leave Ricoh and has assisted All Copy or third parties in hiring those employees. (*Id.* ¶¶ 45-47.) Ricoh's Complaint asserts claims against Bailon for breach of contract (Count I), against All Copy for intentional interference with Bailon's Agreement with Ricoh (Count II), and against both Bailon and All Copy for intentional interference with Ricoh's agreements with its customers (Count III) and for unfair competition (Count IV). On June 24, 2019, Bailon and All Copy filed the instant Motion to Dismiss.

## III. LEGAL STANDARD

Rule 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

In deciding a motion under Rule 12(b)(6), we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230. We must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878–79 (3d Cir. 2018). "However, 'we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" *Id.* at 879 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

Evaluation of a Rule 12(b)(6) motion entails a three-step analysis: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'"; and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, when a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990).

## IV. DISCUSSION[4]

The primary disputed issue here is whether Ricoh has plausibly alleged an exchange of "new and valuable" consideration for the Agreement. *See Socko v. Mid-Atlantic Sys. of CPA, Inc.*, 126 A.3d 1266, 1275 (Pa. 2015). Pennsylvania law generally disfavors restrictive covenants in the employment context, and they are only valid and enforceable if certain requirements are satisfied.[5] *Id.* at 1274. Among these requirements, "consideration is crucial, whether the covenant is entered into prior to, during, or after employment ends." *Id.* "If a noncompetition clause is executed at the inception of the employment, the consideration . . . may be the award of the position itself. *Id.* at 1275. However, in the case of post-employment covenants—like the one at issue here—they are enforceable "only if the employee receives 'new' and valuable consideration—that is, some <u>corresponding</u> benefit or favorable change in employment status." *Id.* (emphasis added) (quoting *Pulse Tech., Inc. v. Notaro*, 67 A.3d 778, 781-82 (Pa. 2013)); *see also Allied Orthopedic Assoc., Inc. v. Leonetti*, No. 18-1566, 2018 WL 4051801, at *6 (E.D. Pa. Aug. 24, 2018) (noting that under Pennsylvania law, post-employment restrictive covenants require new consideration); *Ozburn-Hessey Logistics LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 455 (E.D. Pa. 2014) (finding post-employment restrictive covenant void where it was not supported by new consideration). New consideration can be in the form of, *inter alia*, a promotion or a change to a compensation package. *Socko*, 126 A.3d at 1275. However, "the mere continuation of the employment relationship at the time of entering into the

---

[4] The Agreement provides that it will be governed by Pennsylvania law, and the parties have not disputed this choice of law. Accordingly, we analyze the Agreement under Pennsylvania law.

[5] To be enforceable under Pennsylvania law, restrictive covenants must also be ancillary to an employment relationship, the restrictions imposed must be reasonably limited in duration and geographic extent, and the restrictions must be designed to protect the legitimate interests of the employer. *Socko*, 126 A.3d at 1274. Because the parties' submissions do not discuss these requirements, we do not address them at this juncture.

restrictive covenant is insufficient to serve as consideration for the new covenant." *Id.*; *see also Ozburn-Hessey*, 40 F. Supp. 3d at 455 ("[N]ew consideration must include 'a change in the conditions of employment.'" (quoting *Maint. Specialties, Inc. v. Gottus*, 314 A.2d 279, 281 (Pa. 1973))). "The adequacy of consideration to support a restrictive covenant is an issue of law." *Allied Orthopedic Assoc.*, 2018 WL 4051801, at *6 (citing *Davis & Warde, Inc. v. Tripodi*, 616 A.2d 1384, 1387 (Pa. Super. Ct. 1992)).

Applying these principles, we conclude that Ricoh has failed to plausibly allege that Bailon received new and valuable consideration for the Agreement. First, the Agreement itself does not support—and arguably contradicts—Ricoh's allegations that the consideration included "Bailon's promotion to Customer Relationship Manager." (Compl. ¶ 26.) *See, e.g.*, *ULC Oil & Gas Field Servs. v. EXCO Res. (PA), LLC*, No. 14-72, 2014 WL 6607280, at *5 (W.D. Pa. Nov. 19, 2014) ("[W]here a claim is predicated on a written instrument that is attached as an exhibit to the complaint, the written instrument will control and courts are not required to accept as true any contradictory allegations in the complaint." (collecting cases)); *Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, No. 07-4756, 2008 WL 11365216, at *2 (E.D. Pa. Apr. 23, 2008) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (citation and quotation marks omitted)). As noted above, the Agreement recites that Ricoh and Bailon mutually desired his continued employment, a condition of which was his execution of the Agreement. The mere continuation of Bailon's employment relationship with Ricoh is not new and valuable consideration for the post-employment restrictive covenant. *See Socko*, 126 A.3d at 1275. Moreover, neither the consideration clause of the Agreement, nor any other provision, makes any reference to a corresponding promotion as consideration.

7

Second, the Complaint is conspicuously vague regarding whether any of the consideration Bailon allegedly received corresponded with, pre-dated, post-dated, or was connected to his execution of the Agreement. Ricoh alleges that, as consideration for the Agreement, Bailon received the promotion to Customer Relationship Manager on an unspecified date "[i]n 2010," and that as a result, "he began earning a commission based on sales and an increase in his total wages." (Compl. ¶¶ 16-17.) It appears to be undisputed that Bailon executed the Non-Compete Agreement on September 7, 2010. Yet the Complaint does not allege when in 2010 Bailon received the promotion, whether or to what extent Bailon received sales commissions in his prior position, or how Bailon's alleged increase in compensation was linked to the Agreement. Ricoh's nebulous allegation that Bailon's compensation "increased by approximately 35% during the first 12 months after he accepted the [Customer Relationship Manager] position," (*see* Compl. ¶ 26), is insufficient to support a plausible inference that he earned or received the alleged consideration in exchange for the post-employment Agreement. Ricoh also alleges that, at some unspecified point, Bailon was afforded access to Ricoh's trade secret and confidential customer information. (*Id.* ¶ 19-25.) Again, the Complaint does not allege whether Bailon had access to trade secret and confidential information before he executed the Agreement. Finally, Ricoh has not cited any authority for the proposition that because at some unspecified point it "has provided" employees "with trade secret and confidential information and valuable specialized training" necessary to the performance of their jobs, it has therefore furnished new and valuable consideration for a post-employment restrictive covenant. (*Id.* ¶ 38.)

In short, these pleading deficiencies compel the dismissal of Counts I and II of Ricoh's Complaint. As to the breach of contract claim, Ricoh has not plausibly alleged the existence of a

valid, enforceable restrictive covenant. *See*, *e.g.*, *Ozburn-Hessey*, 40 F. Supp. 3d at 455 (holding that restrictive covenant not supported by new consideration is void). The same reasoning requires dismissal of the claim against All Copy for intentional interference with Ricoh's Agreement with Bailon. *See*, *e.g.*, *Phillips v. Selig*, 959 A.2d 420, 429 (Pa. Super. Ct. 2008), (noting that "the existence of a contractual relationship between the complainant and a third party" is a "necessary element[] of a cause of action for interference with existing contractual relations"), *appeal denied*, 967 A.2d 960 (Pa. 2009).

Similarly deficient is Ricoh's claim against Bailon and All Copy in Count III for intentional interference with Ricoh's existing or prospective contractual relationships with its customers. An essential element of this claim is "the absence of privilege or justification on the part of the defendant." *Phillips*, 959 A.2d at 428-29. "Pennsylvania [law] places the burden on the plaintiff, as part of his or her case in chief, to prove the absence of any privilege or justification on the part of the defendant." *Buskirk v. Apollo Metals*, 307 F.3d 160, 172 (3d Cir. 2002). Because Ricoh has failed to plausibly allege an enforceable restrictive covenant, it has also failed to adequately allege that Bailon's or All Copy's competition with Ricoh was improper. *See Gilbert v. Otterson*, 550 A.2d 550, 554 (Pa. Super. Ct. 1988); *see also Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy,* 203 A.2d 469, (Pa. 1964) ("[I]n the absence of an express contract to the contrary, solicitation of a former employer's customers, on behalf of another in competition with the former employer, will not be enjoined."); *see also* Restatement (Second) of Agency § 393, comment e ("[A]fter termination of his agency, the agent can properly compete with his principal as to matters for which he has been employed.").

For the reasons set forth above, Ricoh's claim of unfair competition (Count IV) is also dismissed to the extent it is based on Bailon's and All Copy's alleged breach of or interference

with the Agreement.  Finally, Ricoh's unfair competition claim is also insufficiently pled to the extent it is based on the disclosure or use of Ricoh's alleged trade secret or confidential information.  Although the Complaint recites a laundry list of allegedly trade secret and confidential information, customer relationships, and goodwill that Bailon acquired during his tenure with Ricoh, the unfair competition claim relies on a conclusory allegation that Bailon and All Copy improperly used and disclosed Ricoh's confidential information.  This allegation is not plausible in light of the factual allegations indicating that Bailon and All Copy merely sought business or employment relationships with some of Bailon's former Ricoh customers and colleagues.  The conduct alleged by Ricoh does not plausibly state a claim for unfair competition.  *See*, *e.g.*, *Ozburn-Hessey*, 40 F. Supp. 3d at 453 (holding that former employee "committed no legal wrongdoing in exploiting the knowledge and customer relationships [he] developed" at his previous employer); *cf. Wolfington Body Co., Inc. v. O'Neill*, No. 67 EDA 2017, 2018 WL 2011398, at *6, 8 (Pa. Super. Ct. Apr. 30, 2018) (affirming trial court's finding that information acquired by salesperson during previous employment did not constitute trade secrets or actual confidential information).

## V. CONCLUSION

Ricoh has failed to plausibly allege that Bailon violated, or that All Copy interfered with, a valid, enforceable restrictive covenant; that either Bailon or All Copy improperly interfered with Ricoh's contractual relations; or that either Defendant engaged in unfair competition under Pennsylvania law. Accordingly, Defendants' Motion to Dismiss will be granted, and Plaintiff's Complaint will be dismissed with leave to amend. An appropriate Order follows.

**BY THE COURT:**

**/s/ Judge John Milton Younge**
**Judge John Milton Younge**